COOK, Circuit Judge.
Kyle Kennard appeals the adverse judgment on his claim to disability retirement benefits from his former employer under the Employee Retirement Income Security Act (“ERISA”), 29 U.S.C. § 1132(a)(1)(B). Finding the employer’s decision to deny benefits arbitrary and capricious, we reverse.
I.
Kennard operated machines for Means Industries, Inc. until 1990 when he inhaled fumes from a chemical spill, severely injuring his lungs and rendering him ultra-sensitive to noxious fumes. As a result, his treating physician imposed a lifelong restriction that he work only in a clean-air environment. Means provided Kennard a clean-air environment to perform clerical work from March 1992 until 2006. But Means could only do so much; though it warned other employees in Kennard’s work area against wearing perfume or lighting candles, various fumes would shorten Kennard’s breath and require him to leave work. Kennard stopped working in 2006.
That same year, Kennard successfully applied for disability benefits from the Social Security Administration (“SSA”). According to the SSA’s written decision, medical evidence showed that “even extremely low levels of airborne dusts, mists, fumes, vapors, perfumes, cleaning fluids, etc.” gave Kennard “severe cough variant asthma and angiodema.” The SSA record included (1) an opinion from a treating physician that Kennard “was totally and permanently disabled from employment” and (2) a vocational expert testifying that, based on Kennard’s pulmonary restrictions and age, education, and work experience, “there are no jobs in the national economy that [he] could perform.” The administrative law judge, applying SSA’s standard for disability, found Kennard unable to “engage in any substantial gainful activity.”
SSA decision in hand, Kennard next sought disability retirement benefits under Means’s ERISA-governed group insurance policy (the “Plan”). The Plan entitles an employee to benefits “if he has been totally disabled by bodily injury or disease so as to be prevented thereby from engaging in any occupation or employment for remuneration or profit, and which condition constitutes total disability under the federal Social Security Act.” Means’s plan further conditions benefits on an assessment by its chosen physician that the disability be permanent.
Means sent Kennard to be examined by two physicians to determine his qualification for the disability retirement benefit. The first physician, Dr. Michael Holda, examined Kennard’s back for the effects of a degenerative disc disease unrelated to the lung disease and reported:
Based on today’s examination, I would recommend that [Kennard] be restricted from repetitive bending and twisting at the waist and lifting over 25 pounds. I would recommend no prolonged sitting or standing.
The second physician, Dr. Gerald Levin-son, examined Kennard’s lungs and reported:
[Kennard] is employable as long as he could be guaranteed that he would be placed in an absolute clean air environment with absolutely no noxious fumes *557 or inhalants, as he is extremely sensitive to this. If that criteria could be met, then he could be employable in a clerical position (this was not the case at his usual and customary employment place), however, if not then he would be considered medically and permanently disabled.
With these exam results, Means’s Plan Administrator denied Kennard’s request for benefits in a February 2010 letter. The administrator’s decision cited only the above findings and concluded, without discussion, that “[o]n the basis of your recent medical examination and in accordance with Plan terms, we have determined that you are not permanently disabled within the meaning of the plan.”
Kennard then filed a federal ERISA complaint seeking to enforce his rights under the Plan. The district court granted Means’s motion to affirm the administrator’s decision and denied Kennard’s motion to reverse it, “[i]n light of the consistent assessments that Kennard was capable of sedentary work in a clean-air environment.”
II.
Though acknowledging that Kennard faces a high burden to convince this court to disturb the administrator’s decision, we determine that he carries that' burden. A claimant operating under a plan that grants the administrator decisional discretion must show that the administrator’s judgment was “arbitrary and capricious.” Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111-15, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); Judge v. Metro. Life Ins. Co., 710 F.3d 651, 657 (6th Cir.2013). This court nevertheless must ensure that the administrator “can offer a reasoned explanation, based on the evidence, for its judgment that a claimant was not ‘disabled’ within the plan’s terms,” Elliott v. Metro. Life Ins. Co., 473 F.3d 613, 617 (6th Cir.2006), eschewing the “rubber stamp” label, see Schwalm v. Guardian Life Ins. Co. of Am., 626 F.3d 299, 308 (6th Cir.2010).
Upon a close reading of the medical reports, we reject the district court’s conclusion that those reports support the administrator’s decision that Kennard can “engag[e] in any occupation or employment.” Bare recitations of “medical data, without reasoning, cannot produce a logical judgment about a claimant’s work ability.” Elliott, 473 F.3d at 617; Burge v. Republic Engineered Prods., 432 Fed.Appx. 539, 551 (6th Cir.2011). Beginning with Dr. Hol-da’s report, no explanation supports why it — recording measurements of Kennard’s postural functioning — establishes that Kennard can work with his particular and severe lung disease.
Likewise, the plan administrator offered no explanation why Dr. Levinson’s report — opining that Kennard can work in an “absolute clean-air environment” without describing what that means in terms of a real American workplace — supports denial of benefits. See McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 170-71 (6th Cir.2003) (rejecting reliance on report that noted that severely depressed claimant “might be able to return to work in a very low stress environment on a limited trial basis”); Burge, 432 Fed.Appx. at 551 (same for reports that noted that claimant “could return to her job with some restrictions” due to major depression and a hand injury).
A valid denial of benefits premised on Dr. Levinson’s opinion would need to include evidence of the existence of absolute-clean-air jobs available to Kennard. The SSA found (and Means does not dispute) that “there are no jobs in the national economy that Kennard could perform.” *558 (A.R.106.) Though the Plan Administrator was not required to seek out vocational evidence, see Judge, 710 F.3d at 662-63, or to apply the SSA’s legal standard for disability, see Black & Decker Disability Plan v. Nord, 538 U.S. 822, 833, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003), Means’s administrator needed to ground its decision on a reasoned explanation. In failing to tackle the implicit nonexistence of jobs compliant with the strict condition Dr. Levinson prescribed, the Plan Administrator’s decision that Kennard can work is not “the result of a detailed, principled reasoning process and ... supported by substantial evidence.” Elliott, 473 F.3d at 617.
Moreover, to the extent that the administrator interpreted the Plan language— requiring that the claimant’s disability prevents him “from engaging in any occupation or employment for remuneration or profit” — to include a job that exists only in theory, that interpretation is in error. We rejected a hyper-literal interpretation of similar language in VanderKlok v. Provident Life and Accident Insurance Company, holding that a requirement that the claimant be “prevented from engaging in every business or occupation” excluded “nominal employment, such as selling peanuts or pencils.” 956 F.2d 610, 614-15 (6th Cir.1992). Just as “every business or occupation” does not include literally every form of earning money, “any occupation or employment” also does not include jobs that exist only hypothetically.
Because “there [is] no evidence in the record to support a termination or denial of benefits, an award of benefits is appropriate without remand to the plan administrator,” Shelby Cnty. Health Care Corp. v. Majestic Star Casino, LLC, 581 F.3d 355, 373 (6th Cir.2009) (internal alterations omitted), particularly in the absence of Means requesting an opportunity to reconsider Kennard’s application. We therefore remand the case to the district court with instructions to award Kennard disability retirement benefits, retroactive to the date on which they accrued under the Plan, and to consider his request for attorney fees and costs under 29 U.S.C. § 1132(g)(1).
III.
We REVERSE the judgment of the district court and REMAND for proceedings consistent with this opinion.
KAREN NELSON MOORE, Circuit